IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| ALVARO MANRIQUEZ-ALMONTE, | Civ. No. 03-0003-AA |
|     Plaintiff, | |
|   v. | |
| JEAN HILL, et al., | OPINION AND ORDER |
|     Defendants. | |

---

Emilio F. Bandiero
Law Office of Emilio F. Bandiero, P.C.
975 Oak Street, Suite 625
Eugene, Oregon 97401
    Attorney for plaintiff

Leonard Williamson
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301-4096
    Attorney for defendants

AIKEN, Judge:

Plaintiff filed suit pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendant Jean Hill, the superintendent of Snake River Correctional Institution (SRCI), and medical staff at SRCI: Dahlin, M.D.; Duncan, M.D.; Stoune, M.D.; Folkman, R.N.; Merwin, R.N.; Wick, R.N.; and Caring, R.N. (collectively referred to as the State) violated his Eighth Amendment rights. More specifically, plaintiff claims that the State's failure to properly diagnose and treat his broken ankle constituted deliberate indifference to his serious medical needs. All defendants move for summary judgment. The defendants' motion is denied with respect to the medical staff but is granted with respect to Superintendent Jean Hill.

## FACTS

On January 8, 2002, plaintiff Alvaro Manriquez-Almonte broke his left ankle while playing basketball in the prison recreation yard. Plaintiff was taken by wheelchair to SRCI medical (hereinafter referred to as medical services), where he was examined by Nurse Folkman. Nurse Folkman noted that his ankle was red and swollen, exhibited a limited range of movement, and that plaintiff experienced pain upon palpitation of the inside of his ankle. She did not diagnose a broken ankle at that time, but rather recommended elevation, ice, an Ace wrap, anti-inflammatory medication, and crutches.

After leaving medical services on January 8, plaintiff made

2 - OPINION AND ORDER

repeated requests, both in person and through other inmates, for additional medical care. More specifically, plaintiff alleges that after he left medical services on January 8, another inmate, Jose Alvarez Ybarra, asked Officer Dayton to get medical help for plaintiff. Additionally, plaintiff alleges that between January 8 and January 11, plaintiff asked Officer Manzo to contact medical services for him, but Officer Manzo informed him that medical services had refused his request for treatment. Further, plaintiff alleges that both he and inmate Ybarra spoke to the supervising officer, Lieutenant Reyes, about plaintiff's condition, and inmate Ybarra asked Lt. Reyes to contact medical services and obtain treatment for plaintiff. Plaintiff also alleges that, on January 9, he asked Officer Burgess to contact medical services and request treatment, but he was told later by Officer Burgess that medical services had refused to see him. According to plaintiff, he was not allowed to go to medical services for treatment until after 5:15 p.m. on January 11.

The State denies that medical services ever refused to see plaintiff. However, the State admits that plaintiff made multiple requests for medical treatment, but that he was not seen by medical services until January 11. Specifically, the State admits that between January 8 and January 11 Officer Manzo called medical services to seek treatment for plaintiff, inmate Ybarra asked Lt. Reyes to call medical services and request treatment for plaintiff,

3 - OPINION AND ORDER

and plaintiff asked Officer Dayton to call medical services and request treatment for plaintiff.

On January 11, plaintiff saw Nurse Merwin, who examined his foot, ankle, and leg. Nurse Merwin contacted the x-ray technician at SRCI and requested that he come in the following day to x-ray plaintiff's ankle. For reasons unknown, plaintiff was not x-rayed on January 12.

Plaintiff entered medical services again on January 13 and was examined by the on-duty nurse, Alisha Phillips. Plaintiff told Nurse Phillips that he was in excruciating pain. Nurse Phillips observed that the amount of pain plaintiff claimed to be experiencing was clinically consistent with the condition of his leg. By this time, the swelling from plaintiff's injured ankle had spread up to his groin area. Nurse Phillips also noted that plaintiff's injured foot was cold. After examining plaintiff's foot and leg, Nurse Phillips made immediate arrangements with the doctor on duty to have plaintiff taken to Holy Rosary Medical Center in Ontario, Oregon. At the hospital, plaintiff was examined by Dr. Bills, who immediately performed surgery on plaintiff's ankle. Plaintiff returned to SRCI on January 14, one day after his surgery. Upon plaintiff's return, SRCI medical prescribed Vicodin for relief of discomfort. The following day, the SRCI staff re-issued crutches to plaintiff.

Following plaintiff's return to SRCI, he was treated by Dr.

4 - OPINION AND ORDER

Duncan and Dr. Dahlin.  Eventually, plaintiff's cast was removed, and he underwent another surgery to remove a screw that had been inserted in his ankle.  Plaintiff made multiple trips to medical services complaining of continued pain in his ankle.  Plaintiff and the State are in dispute as to whether plaintiff has fully recovered from his injury.  According to the State, plaintiff is fully recovered, maintains a prison work assignment that requires him to walk and stand for the entire shift, and played on a winning soccer team.  Plaintiff, however, alleges that he has not fully recovered, was on the soccer team in name only, and has not played any soccer since his injury.

Although plaintiff's native language is Spanish, he was never provided with an interpreter for any of his visits to medical services.  Plaintiff alleges that he was unable to effectively communicate with the medical staff because of the language-barrier.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The materiality of a fact is determined by the substantive law on the issue.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987).  The authenticity of a dispute

is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

### A. Eighth Amendment Claim

Plaintiff claims that the State violated plaintiff's Eighth Amendment rights by deliberately failing to provide proper treatment for his broken ankle, refusing him medical treatment for five days, and failing to provide adequate post-operative treatment. The State admits that plaintiff's broken ankle was a serious medical need, but maintains that SRCI staff members adequately treated plaintiff's ankle and did not demonstrate

deliberate indifference.

In <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." <u>Id.</u> at 104 (citing <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976)) (internal citation omitted). The Court explained that "an inadvertent failure to provide adequate medical care" does not allege a violation of the Eighth Amendment. <u>Id.</u> at 105. Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Id.</u> at 106; <u>see also</u> <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990) (negligence, or even gross negligence, is insufficient to state a claim under the Eighth Amendment). Deliberate indifference requires a showing that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>see also</u> <u>LeMaire v. Maase</u>, 12 F.3d 1444, 1451 (9th Cir. 1993) (violation of Eighth Amendment requires showing of culpable state of mind beyond mere negligence).

The Ninth Circuit has repeatedly stated that, "[p]rison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere

7 - OPINION AND ORDER

with medical treatment." Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992) (citing Hunt v. Dental Dept., 865 F.2d 198, 201 (9th Cir. 1989)). Although the Ninth Circuit has stated that a delay in treatment does not constitute an Eighth Amendment violation unless that delay caused harm, Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985), the Supreme Court explained in Estelle that evidence of pain and suffering is sufficient to constitute an Eighth Amendment violation. Estelle, 429 U.S. at 103.

Viewing plaintiff's allegations in the most favorable light, I find that the State's delay in adequately treating plaintiff's broken ankle and repeated refusals to treat plaintiff for a five-day period arguably constitutes deliberate indifference to plaintiff's serious medical needs. According to plaintiff, he and another inmate spoke to at least four officers between January 8 and January 11 and requested that plaintiff be sent to medical services to have his injured leg examined. Plaintiff alleges that medical services repeatedly refused to examine his ankle. Although the State denies that medical services ever refused to see plaintiff, the State admits that plaintiff made repeated requests for treatment from medical services between January 8 and January 11, and that he was not seen by medical services until after 5:15 p.m. on January 11.

When plaintiff's leg was examined on January 11, Nurse Merwin

8 - OPINION AND ORDER

considered plaintiff's condition to be serious enough that she contacted the x-ray technician and asked him to come in the following day to x-ray plaintiff's ankle. The next day, however, no x-ray was taken.

Plaintiff did not receive extensive treatment for his broken ankle until he returned to medical services on January 13. By that time, plaintiff alleges that he had missed meals because he was in too much pain to go to the meal area. When plaintiff returned to medical services on January 13, Nurse Phillips observed that the swelling from plaintiff's broken ankle had spread up to his groin and that he was experiencing excruciating pain. Nurse Phillips's concern about plaintiff's condition is evident by the fact that she immediately contacted a doctor at SRCI and arranged to have plaintiff taken to the emergency room at Holy Rosary Medical Center hospital. At the hospital, Dr. Bills immediately performed surgery on plaintiff's ankle.

Therefore, I find that genuine factual disputes exist, which are material to the outcome of this case. Given the length of time that plaintiff's treatment was delayed, the amount of pain that he experienced, and the allegations that medical services repeatedly refused to see him, the State fails to demonstrate that there is no genuine issue of material fact.

B.  Qualified Immunity

Regardless, the State argues that defendants are entitled to

9 - OPINION AND ORDER

qualified immunity because they did not violate plaintiff's clearly established constitutional rights.  Qualified immunity generally provides immunity from civil liability to government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The Ninth Circuit has developed a three step-process a court must undertake to determine whether a defendant is entitled to qualified immunity: "(1) identify the right allegedly violated, (2) determine whether the right was 'clearly established,' and (3) determine whether a reasonable official would have believed his or her conduct to be lawful."  <u>Hamilton v. Endell</u>, 981 F.2d 1062, 1067 (9th Cir. 1992).

Qualified immunity, however, is not appropriate in cases where sufficient facts have been alleged, which if found to be true, could lead a jury to infer that prison officials have been deliberately indifferent to a prisoner's serious medical need.  <u>See id.</u> at 1066.  In the prison medical context, a prisoner's right under the Eighth Amendment should be construed broadly.  <u>Kelley v. Borg</u>, 60 F.3d 664, 666-67 (9th Cir. 1995).  Thus, the relevant question is whether a prisoner has a right, "under the Eighth Amendment, to have prison officials not be deliberately indifferent to serious medical needs."  <u>Kelley</u>, 60 F.2d at 666 (internal citations omitted).  Legal precedent has clearly established "a

10 - OPINION AND ORDER

right to officials who are not 'deliberately indifferent to serious medical needs.'" Id. at 667 (quoting Estelle v. Gamble, 429 at 106); see also Hamilton, 981 F.2d at 1066. Accordingly, "[a] finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who *deliberately* ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law." Hamilton, 981 F.2d at 1066.

In this case, plaintiff has alleged facts sufficient to allow a jury to find that the State was deliberately indifferent to plaintiff's serious medical need. Therefore, plaintiff is not entitled to qualified immunity.

## C.   Liability of Individual Defendants

The state argues that plaintiff makes no specific allegation against defendants Dr. Stoune and Nurse Caring. However, plaintiff makes specific allegations against both Dr. Stoune and Nurse Caring in the complaint. First, plaintiff alleges that Dr. Stoune ordered that plaintiff be returned to his cell without crutches or a wheelchair and prevented plaintiff from being given pain relief medication following surgery. Additionally, plaintiff alleges that Nurse Caring ignored his request for an interpreter and failed to give him any pain relief medication following surgery. Therefore, summary judgment is inappropriate as to these individuals.

The State also argues that summary judgment should be granted

11 - OPINION AND ORDER

with respect to defendant Jean Hill, the superintendent of SRCI, because plaintiff has failed to allege that Superintendent Hill played any personal role in the alleged constitutional violation. "State officials are not subject to suit under section 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights." King v. Atiyeh, 814 F.2d 565, 568 (1987); accord Rizzo v. Goode, 423 U.S. 362, 377 (1975). Therefore, Superintendent Hill cannot be liable based solely on her position as a state official or her supervisory role because, "[t]here is no respondeat superior liability under section 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984)).

Furthermore, a supervisor may only be liable for the actions of her subordinates "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). In this case, plaintiff has failed to claim that Jean Hill either participated in, directed, or knew of the alleged constitutional violations of her subordinates.

## CONCLUSION

For the reasons given above, defendants' Motion for Summary Judgment (doc. 55) is GRANTED with respect to individual defendant Jean Hill and DENIED in all other respects.

12 - OPINION AND ORDER

IT IS SO ORDERED.

Dated this __28__ day of September, 2005.


           /s/ Ann Aiken
             Ann Aiken
    United States District Judge